USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/21/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X  :
TRAVIS PARKER                                      :
                                                   :
                        Plaintiff,                 :          **OPINION**
                                                   :
          -against-                                :          20-CV-8419 (KHP)
                                                   :
COMMISSIONER OF SOCIAL SECURITY,                   :
                                                   :
                        Defendant.                 :     :
-----------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**:

Plaintiff Travis Parker ("Plaintiff"), represented by counsel, commenced this action

against Defendant, Commissioner of the Social Security Administration (the "Commissioner"),

pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of the

Commissioner's decision that he was not disabled from August 26, 2016, the onset date of his

alleged disability, through the date of the decision, October 28, 2019.

For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS the

Commissioner's motion for judgment on the pleadings.

### BACKGROUND

Plaintiff born in 1989, worked for a private sanitation company where he was injured on

the job when lifting heavy garbage containers in 2016, which caused his alleged disability.

Plaintiff completed high school and previously worked as a furniture mover and materials

handler, among other jobs (some part-time) involving manual labor.  (A.R. 19, 37-42.)  Plaintiff

suffers from obesity; degenerative disc disease; carpal tunnel syndrome; vestibular dysfunction;

tendinopathy of the shoulder; and detached anterior superior labrum.  (A.R. 12.)

1. *Procedural History*

On November 29, 2017, Plaintiff filed an application for Social Security Disability Insurance ("SSD") benefits alleging disability due to the physical impairments referenced above. (A.R. 10, 175-77.)  Plaintiff's claims were denied after initial review on March 8, 2018.  (*Id.*)  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Laura Michalec Olszewski was held on September 25, 2019, via videoconference.  (*Id.*)  Plaintiff appeared with counsel and testified at the hearing.  (*Id.*)  Vocational Expert ("VE") Ray O. Burger also testified.  (*Id.*)  On October 28, 2019, ALJ Olszewski denied Plaintiff's application.  (A.R. 21.)  Plaintiff appealed, and on August 10, 2020, the Appeals Council denied Plaintiff's appeal, making the ALJ's decision the Commissioner's final act.  (A.R. 1.)  Plaintiff's date of last insured was September 30, 2019. (A.R. 12.)

Plaintiff commenced this action on October 8, 2020, asserting that the ALJ failed to properly evaluate the medical opinion evidence in formulating Plaintiff's residual functional capacity ("RFC").  (ECF Nos. 1, 29.)  Per this Court's order dated January 22, 2021 (ECF No. 10), the parties submitted a joint stipulation in lieu of Motion for Judgment on the Pleadings.  (ECF No. 29.)

2. *Summary of Relevant Medical Evidence*

On September 29, 2016, a magnetic resonance imaging ("MRI") scan of Plaintiff right shoulder showed a detached anterior superior glenoid labrum and tendinopathy of the supraspinatus of the right shoulder.  (A.R. 271, 298, 308, 371-72, 390.)  On November 29, 2016, Plaintiff underwent a right shoulder arthroscopy and superior labrum anterior posterior ("SLAP") repair.  (A.R. 271, 340.)  On May 2, 2018, Plaintiff underwent a second right shoulder

2

arthroscopic surgery performed by orthopedic surgeon Gabriel L. Dassa to repair his rotator cuff tendon tear and labrum/SLAP tear.  (A.R. 485, 488-491.)

In addition to injuries to his right shoulder, a July 8, 2017 MRI of Plaintiff's cervical spine showed a C5-C6 disc herniation and foraminal narrowing bilaterally at C4-C5.  (A.R. 271, 366-367, 390.)  On September 26, 2017, testing showed moderate bilateral carpal tunnel syndrome with radiculopathy at right C5-C6.  (A.R. 271, 282, 284, 322.)

A. *Dr. Yuklin Ling*

On August 26, 2016, Plaintiff visited a CityMD where he saw Dr. Ling after sustaining a work-related injury.  (A.R. 248.)  Specifically, Dr. Ling noted that Plaintiff stated he heard a pop of his right shoulder after throwing a trash bag a month earlier, but continued to work with no restrictions.  (*Id.*)  Plaintiff claimed to suffer from a dull pain in his right shoulder that radiated to his back and was worsening.  (*Id.*)  Dr. Ling noted no acute distress, no gross deformity of the right shoulder, his right rotator cuff was tender, but an x-ray was unremarkable and showed no fracture or dislocation.  (A.R. 248-49, 252.)

B. *Dr. Patrick Murray*

On December 15, 2016, Dr. Murray noted that Plaintiff continued to exhibit pain and his right shoulder was tender upon palpation.  Plaintiff reported to have been vomiting after taking Oxycodone.  (A.R. 303).  His gait was normal.  Dr. Murray opined that Plaintiff was not fit for work based on New York State Worker's Compensation guidelines.  (*Id.*)

On January 12, 2017, Dr. Murray noted that Plaintiff had started physical therapy for his right shoulder and was progressing.  (A.R. 301.)  Plaintiff reported that he was no longer taking any medication for pain.  (*Id.*)  Plaintiff had tenderness to palpation in his right shoulder but

3

intact sensation to light touch in his right upper extremity.  (A.R. 302.)  His right shoulder

showed passive forward flexion to 170 degrees, and passive external rotation to 60 degrees.

(A.R. 300.)  He was diagnosed with a lumbar sprain.  (*Id.*)  Dr. Murray concluded that Plaintiff

was not fit to work.  (*Id.*)  The same assessment and findings were also made during follow-up

visits on February 28 and April 14, 2017.  (A.R. 299-300, 340-41.)  Upon examination on August

11, 2017, Dr. Murray noted that Plaintiff had done well with respect to his right shoulder.  (A.R.

342.)

In August and September 2017, Dr. Murray observed that Plaintiff had normal strength,

and no weakness in his wrists.  (A.R. 344, 347.)  On September 12, 2017, Dr. Murray noted that

Plaintiff had occasional soreness and clicking in his right shoulder, but overall felt improved and

was no longer doing physical therapy.  (A.R. 345.)  During examinations on both dates, Plaintiff

had tenderness on palpation in certain muscles of the right shoulder but did not have any pain

with movement of either of his shoulders. (A.R. 343, 346.)  In September, Dr. Murray also

assessed lower back pain, noting that Plaintiff's spine was tender upon palpation.  (A.R. 344,

346-47.)  Dr. Murray stated that Plaintiff was close to maximum medical improvement with

respect to his right shoulder and could likely return to work in some capacity.  Dr. Murray

recommended a functional evaluation.  (A.R. 347.)

On January 31, 2018, Plaintiff reported continued occasional soreness and clicking in his

right shoulder.  (A.R. 454-55.)  Dr. Murray found that Plaintiff had normal grip strength and no

weakness in either hand.  (*Id.*)  On February 5, 2018, a right shoulder MRI showed "full-

thickness tearing of the anterior fibers of the infraspinatus tendon" and "partial articular

surface tearing of the supraspinatus tendon" along with "acromioclavicular arthrosis." (A.R. 457.)

As to Plaintiff's back pain, on February 28, 2017, Plaintiff stated that his low back pain increased with prolonged sitting. (A.R. 299.) Plaintiff's gait and stance were normal. (A.R. 300.) On August 11, 2017, Dr. Murray observed that Plaintiff had pain with range of motion of the low back. (A.R. 342-343.) His lumbosacral spine was tender to palpation but he did not have any weakness. (*Id.*) His gait and stance were normal and he had normal sensation and reflexes in his lower extremities. (A.R. 344.)

Lastly, from in or about October 2016 through January 2018, Dr. Murray opined that Plaintiff's degree of temporary impairment pursuant to workers' compensation guidelines was 100%. (A.R. 300-12, 335, 341, 344, 455.)

### C. Chiropractor Dr. Marc Habif

On September 12, 2017, Plaintiff was treated by Dr. Habif where he exhibited severe pain with flexion, right lateral flexion, and left rotation, and moderate pain with extension, left lateral flexion, and right rotation of the lumbar spine. (A.R. 297, 369.) Bilateral straight leg raise tests were positive. (*Id.*) Plaintiff's gait and station were normal. (A.R. 297.) Plaintiff had normal range of motion and sensation in his lower extremities. (*Id.*) Dr. Habif recommended that Plaintiff undergo treatment twice per week to correct subluxation fixation and restore mobility and range of motion in Plaintiff's cervical spine. (A.R. 296.) He also prescribed a cervical traction unit. (*Id.*) On October 31, 2017, Plaintiff told Dr. Habif that prolonged standing, sitting, or walking aggravated his low back pain. (A.R. 397.) Plaintiff reported

minimal improvements with therapy and exhibited severe pain with flexion of the cervical spine.  (A.R. 397-98.)

On January 4, 2018, Dr. Habif noted that Plaintiff had normal range of motion in the joints in his upper extremities.  (A.R. 416.)  Plaintiff continued to exhibit severe pain with flexion of the cervical spine, and moderate pain with all other movements.  (*Id.*)  Dr. Habif performed some testing which suggested Plaintiff had a cervical sprain/strain or nerve root irritation.  (*Id.*)  On July 25, August 30, and September 28, 2018, Dr. Habif found that Plaintiff was "diffusely" tender through the paralumbar musculature and moderately tender at the lumbosacral junction.  (A.R. 438, 440, 442.)  Dr. Habif found that Plaintiff exhibited severe pain with flexion and extension, but an inspection revealed no abnormalities.  (A.R. 442, 503, 505, 507.)  On the two later dates, Dr. Habif found that Plaintiff exhibited moderate pain with lumbar spine left rotation and extension.  (A.R. 438.)

During pain management visits on June 30, August 9, and September 27, 2018, Plaintiff's flexion of his lumbar spine was almost 90 percent restricted, his extension and rotation were 33 percent restricted.  (A.R. 534, 539, 542.)  On April 27, 2019, Plaintiff told Dr. Habif that he was experiencing low back pain with radiating pain into his right leg and constant aching pain in the lower back exacerbated by prolonged standing, sitting, or walking.  (A.R. 511.)

As to opinion evidence, on September 12, 2017, Dr. Habif opined that Plaintiff was 100% disabled.  (A.R. 298.)  On October 12, 2017, Dr. Habif opined that Plaintiff could lift up to 5 pounds frequently and 10 pounds occasionally, could stand and/or walk up to 2 hours in an 8-hour workday, and could sit up to 2 hours in an 8-hour workday.  (A.R. 268, 444.)  Dr. Habif

further opined that Plaintiff could never perform any postural activities, could never push

and/or pull with the bilateral upper extremities, and could only occasionally reach (including

overhead), feel, or handle.  (A.R. 269, 445.)  On January 4, 2018, Dr. Habif opined that lifting or

carrying any weight over 10-15 pounds or standing or sitting for an extended time period

without regular breaks might worsen Plaintiff's condition.  (A.R. 418.)

D.  *Dr. Ronald Mann*

On February 22, 2017, Plaintiff underwent an independent medical examination with

orthopedic surgeon Ronald Mann.  (A.R. 355.)  Plaintiff complained of right shoulder pain.  (A.R.

357.)  Dr. Mann observed mild tenderness upon palpation, but Plaintiff did not have any heat,

swelling, erythema, impingement, or crepitus.  (A.R. 358.)  His shoulder showed forward flexion

to 150 degrees (170-180 degrees normal), abduction at 135 degrees (170-180 degrees normal),

internal rotation at 80 degrees (80-90 degrees normal), and external rotation at 60 degrees (80-

90 degrees normal).  (*Id.*)  Dr. Mann opined that Plaintiff was capable of working with

restrictions placed on any lifting over 40 pounds and any overhead repetitive movement.  (A.R.

359.)  Dr. Mann noted evidence of a mild partial disability of 25 percent.  (A.R. 358.)

On July 19, 2017, Plaintiff underwent a second independent medical examination with

Dr. Mann for complaints of right shoulder pain.  (A.R. 361-63).  Dr. Mann concluded that

Plaintiff was in no acute distress and that his right shoulder injury was resolving since his

surgery with a full recovery expected "one year post surgery."  (A.R. 364.)  Since Dr. Mann's

February 2017 examination, Plaintiff's right shoulder abduction had improved to 150 degrees,

and his external rotation had increased to 75 degrees.  (*Id.*)  Nonetheless, Dr. Mann opined that

Plaintiff remained partially disabled -- 25 percent.  (*Id.*)

7

On December 6, 2017, Plaintiff again saw Dr. Mann for an independent medical examination.  (A.R. 459.)  Plaintiff's right shoulder did not exhibit any swelling, effusion, erythema, or crepitus.  (A.R. 463.)  His right shoulder showed forward flexion to 160 degrees, abduction to 160 degrees, internal rotation to 80 degrees, and external rotation to 70 degrees.  (*Id.*)  Nerve impingement, Hawkins/Kennedy and painful arc testing were negative.  (*Id.*)  Dr. Mann opined that Plaintiff was capable of working, but with no excess overhead lifting.  (A.R. 464.)

As to Plaintiff's back, on December 6, 2017, Dr. Mann found that he had no muscle spasm or complaint of tenderness with palpation of the paracervical muscles.  (A.R. 462).  His cervical spine showed flexion to 40 degrees (50 degrees normal), extension to 45 degrees (60 degrees normal), lateral flexion to 40 degrees bilaterally (45 degrees normal), and rotation to 75 degrees bilaterally (80 degrees normal).  (*Id.*)  Plaintiff's lumbar spine showed 90 degrees flexion (60 degrees normal), extension to 20 degrees (25 degrees normal), and bilateral lateral bending to 25 degrees (25 degrees normal).  (*Id.*)  Straight leg raising was negative and Plaintiff's upper extremities were normal.  (*Id.*)  Plaintiff had full (5/5) strength in his lower extremities and no atrophy.  (A.R. 463.)  Deep tendon reflexes and sensation were normal.  (*Id.*)  Plaintiff walked with normal gait and was in no acute distress.  (A.R. 462.)

*E.   Dr. M.L. Sobin*

On September 19, 2017, Plaintiff saw family practice physician M.L. Sobin, for a consultative examination.  (A.R. 274-77, 389-92.)  Plaintiff told Dr. Sobin that he could not sit for more than 15 minutes or stand for more than 10 minutes without pain.  (A.R. 274, 389.)  Plaintiff complained of neck pain radiating to both shoulders with numbness in his hands and

rated his pain as a 7.5 out of 10.  (*Id.*)  He also complained of pain in both shoulders and low back pain that radiated to his left buttock and thigh which caused his left foot to become numb. (*Id.*)  Plaintiff had tenderness upon palpation of the lumbar spine, significantly restricted range of motion, and a positive right straight leg raise test.  (A.R. 275-76, 390-91.)  Plaintiff needed assistance rising from a seated position, was unable to toe walk, and found tandem gait painful. (*Id.*)  Dr. Sobin stated that Plaintiff's degree of impairment was 100% and that he was totally disabled.  (A.R. 272, 276).

On September 26, 2017, testing showed evidence of left L5-S1 radiculopathy.  (A.R. 288, 326.)  Testing also showed Plaintiff's lower limbs were normal and there was no evidence of generalized peripheral neuropathy or motor neuron disease.  (A.R. 290.)  On October 19 and December 5, 2017, and January 9, 2018, Plaintiff had tenderness upon palpation of the right shoulder and pain with range of motion and Dr. Sobin also noted the same limitations and pain from Plaintiff's September visit.  (A.R. 271-72, 393-95, 446-52).

Also, on October 19, 2017, Plaintiff's cervical spine was tender upon palpation, range of motion was restricted, his Spurling's sign was positive, shoulder depression test was positive (left side), and his cervical distraction test was also positive.  (A.R. 271, 394.)  Dr. Sobin diagnosed Plaintiff with a cervical herniated disc and cervical radiculopathy, left shoulder sprain, right shoulder derangement postoperative, and lumbar sprain.  (A.R. 272, 395.)  The same was noted on December 5, 2017 and January 9, 2018.  (A.R. 446-51.)

   *F.   Dr. Gabriel Dassa*

On December 18, 2017, Plaintiff saw Dr. Gabriel Dassa for an initial evaluation where he complained of pain in his cervical spine, lumbar spine, and bilateral shoulders.  (A.R. 481.)

Plaintiff stated that his pain was getting progressively worse with stiffness, burning, numbness, and tingling radiating down to his extremities. (*Id.*)  Dr. Dassa found that Plaintiff suffered from left shoulder impingement syndrome and cervical and lumbar spine sprain.  (A.R. 482.)  Dr. Dassa concluded that Plaintiff was totally disabled and advised that he continue physical therapy and follow up with pain management.  (A.R. 483.)  Plaintiff again saw Dr. Dassa on March 4, 2019, when he was diagnosed with left shoulder impingement syndrome and bursitis. (A.R. 486.)  Dr. Dassa concluded Plaintiff was temporarily totally disabled and again advised Plaintiff to continue with pain management.  (*Id.*)

### G.   Dr. Cheryl Archbald

On January 12, 2018, Plaintiff underwent an internal medicine examination with Dr. Cheryl Archbald.  (A.R. 420.)  Plaintiff told Dr. Archbald that despite his right shoulder surgery on November 29, 2016, his right shoulder was in pain every day and that he found it painful to lift his young son who weighs 20 pounds.  (*Id.*)  Plaintiff reported difficulty with cooking, cleaning, washing his clothes, and shopping due to his right shoulder, neck, and back pain. (A.R. 421.)  He exhibited pain with palpation of the neck, lumbar spine, rotator cuff, and shoulder.  (A.R. 422.)  Plaintiff had full (5/5) strength and normal reflexes and sensation in his upper extremities, and full range of motion of his elbows, forearms, and wrists bilaterally.  (*Id.*) Plaintiff exhibited pain on palpation of the posterior neck.  (*Id.*)  Plaintiff also exhibited pain at 30 degrees extension, pain at 30 degrees right lateral flexion, and pain at 60 degrees right rotary movement.  (*Id.*)  Plaintiff's cervical spine showed full flexion.  (*Id.*)

Plaintiff told Dr. Archbald that he has daily lower back pain despite continuing chiropractic, physical therapy treatment, and epidural pain blocks.  (A.R. 420-21.)  Plaintiff

exhibited pain on palpation of the lower lumbar spine and back pain on lateral spine movement (A.R. 422.)  Plaintiff also exhibited back pain at 50 degrees during his straight leg test from the supine position, but his straight leg raising test was negative in a seated position.  (*Id.*)  Plaintiff did not appear to be in any acute distress.  (A.R. 421.)  His gait and stance were normal, and he could walk on heels and toes without difficulty.  (*Id.*)  He could squat fully with a complaint of lower back pain.  (*Id.*)  He did not need any help changing for the examination or getting on or off the examination table, and he could rise from a chair without difficulty.  (*Id.*)  He had full (5/5) strength in his lower extremities and no muscle atrophy.  (A.R. 422.)  On February 27, 2018, an MRI of Plaintiff's lumbar spine showed disc bulges at L2- L3, L3-L4, and L4-L5.  (A.R. 513.)

On January 12, 2018, Dr. Archbald opined that Plaintiff's prognosis was fair and he had mild limitation for lifting and carrying, raising, reaching, and rotation of his shoulders.  (A.R. 423).  He had moderate limitation for bending.  He had mild limitation with activities involving cervical spine extension (such as looking up), cervical spine lateral rotation to the right (turning his head to the right), cervical spine lateral flexion to the right (tilting his head to the right), and squatting.  (*Id.*)

*H.  Dr. Jeffrey Salkin*

On July 31, 2018, Plaintiff underwent an independent evaluation with orthopedist Jeffrey Salkin.  (A.R. 467.)  Dr. Salkin's examination of Plaintiff's right shoulder showed tenderness to palpation post Plaintiff's second SLAP arthroscopic repair.  (A.R. 472.)  Impingement sign, drop arm, Yergason, cross arm adduction, and apprehension testing were

negative. (*Id.*) He did not have any muscle atrophy or crepitus in his right shoulder. (*Id.*) Dr. Salkin recommended that Plaintiff attend physical therapy for six weeks. (*Id.*)

As to Plaintiff's back, Dr. Salkin stated that examination of Plaintiff's cervical spine revealed no spasms. (A.R. 471). There was minimal paraspinal tenderness to palpation. (*Id.*) Plaintiff had intact sensory responses in his upper extremities and 5/5 muscle testing. (*Id.*) Compression, Spurling's and Lhermitte's sign testing were negative. (*Id.*) His cervical spine showed flexion to 40 degrees, extension to 45 degrees, bilateral rotation to 45 degrees, and lateral flexion to 25 degrees. (*Id.*) Plaintiff's straight leg raising tests were negative. (*Id.*) He did not have any paraspinal spasm or tenderness in his lumbar spine. (*Id.*) His lumbar spine showed 50 degrees of flexion, 20 degrees of extension, 20 degrees of right lateral bending, and 20 degrees of left lateral bending. (*Id.*) He could rise on tiptoes/heels and had full (5/5) strength and intact sensation in his lower extremities. (A.R. 471-72.) Dr. Salkin recommend that Plaintiff discontinue chiropractic care and perform home exercises for his cervical and lumbar spine. (A.R. 472.) Dr. Salkin opined that Plaintiff was 50 percent disabled and could perform activities of daily living and return to work as long as he did not lift greater than 15 pounds or perform work about shoulder level with the right arm. (A.R. 473.)

On November 1, 2018, Plaintiff underwent a second examination and stated he was taking Oxycodone and Naproxen for pain management. (A.R. 429.) He described his right shoulder pain as a "burning" pain. (A.R. 430.) Dr. Salkin's examination of Plaintiff's right shoulder revealed tenderness to palpation leading him to diagnose Plaintiff's right shoulder impairment as a "right shoulder labral and rotator cuff tear, status post arthroscopic surgery x2". (A.R. 432.) In addition, Dr. Salkin wrote that Plaintiff should be evaluated for possible

surgical candidacy for a C5-C6 anterior cervical discectomy and fusion ("ACDF").  (*Id.*)  Dr. Salkin stated that physical therapy was not reasonable or necessary and found a moderate (50%) orthopedic causally related disability in accordance with the New York State Worker's Compensation Board guidelines.  (A.R. 432-33.)

As to Plaintiff's back, he told Dr. Salkin that he could walk two-and-a-half to three blocks without experiencing pain.  (A.R. 430.)  Plaintiff's straight leg raising tests were negative.  (A.R. 431.)  He did not have any paraspinal spasm or tenderness in his lumbar spine and could rise on his tiptoes and heels.  (*Id.*)  He had full (5/5) strength and intact sensation in his lower extremities (A.R. 431-32.)

On November 27, 2018, Dr. Salkin opined that Plaintiff could work provided that he did not lift greater than 10 pounds, perform overhead work with his right arm, and bend repetitively.  (A.R. 424.)

I.   *New York Pain Management*

On November 9, 2017, Dr. Nicole Hidalgo observed that Plaintiff's cervical extension was more than 50 percent restricted (30 degrees versus a normal of 62 degrees).  (A.R. 354.) Plaintiff was diagnosed with cervicalgia, lumbago and radiculopathy of the cervical region.  (A.R. 353.)  Treatment records also show that since February 2018 Plaintiff continued to suffer from neck pain and cervical radiculopathy.  (A.R. 519-574.)  Beginning as early as February 1, 2018, Plaintiff was taking Percocet to manage his pain and reported changes in his sleep pattern. (A.R. 520, 526, 529, 533.)  Plaintiff's cervical flexion as of February 1, 2018 and May 3, 2018 was 50 percent restricted.  (A.R. 520, 529.)  On May 31, 2018, Plaintiff's back examination showed paraspinal muscle spasms, paraspinal muscle tenderness, limited flexion and extension, pain

13

with rotation at the waist, and positive pain with facet loading.  (A.R. 531.)  His treatment notes indicate lumbar injection was to be scheduled.  (A.R. 532.)  In June 2018 and August 2018, Plaintiff underwent bilateral cervical nerve root blocks in his shoulder.  (A.R. 560, 568, 571, 573.)

In June 2019, Plaintiff saw Victoria Appiah for a follow-up pain management visit where he exhibited ongoing neck, shoulder, and lower back pain.  (A.R. 555.)  A physical examination continued to reveal positive findings including limited and painful range of motion of the neck, shoulder, and back, as well as tenderness to palpation of the neck and lower back, spasms of the neck and lower back, and positive straight leg raising, facet loading, and Kemp's test.  (*Id.*)

In another visit in July 2019, Dr. Hidalgo advised Plaintiff to continue physical therapy, chiropractic therapy, and pain medications, with reference also made to approvals being sought for radiofrequency therapy and an AposTherapy device.  (A.R. 558.)

*J.   Dr. Gary Ehlert*

On March 7, 2018, non-examining state agency reviewer physician Gary Ehlert reviewed the medical evidence and opined that Plaintiff was limited to light exertional work; occasional stooping; frequent climbing ladders, ropes, or scaffolds, climbing ramps or stairs, balancing, kneeling, crouching, or crawling; and limited overhead right reaching and right handling.  (A.R. 70-71.)  He opined Plaintiff had exertional limitations, that he can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, can stand or walk for about six hours in an eight-hour workday.  (*Id.*)

### 3. *The Administrative Hearing*

At the Administrative Hearing on September 25, 2019, Plaintiff testified that he occasionally drove to do errands, sometimes several times per day, however, did not like to drive long distances. (A.R. 36-37, 43-44.) He also testified to taking his son on trips to the Bronx Zoo and Bear Mountain. (A.R. 45.) Plaintiff stated that he changed his son's diapers, and fed and dressed him, but that it would hurt when he lifted him up as he weighed between 30 to 40 pounds. (A.R. 35, 44-52.) He also could not bathe his son as bending over the tub strained his back. (A.R. 48.) He stated that he cooked simple food and washed dishes, albeit with some difficulty. (A.R. 48-49.) Further, Plaintiff testified that he had pain in his neck and back every day, and tingling sensations in his hands that required him to take pain medications three times a day. (A.R. 50, 52, 54.)

ALJ Olszewski provided VE Burger a hypothetical individual who could perform light exertional work; lift and/or carry 20 pounds occasionally, 10 pounds frequently; sit for 6 hours in an 8-hour day; stand or walk for 6 hours in an 8-hour day; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, or stoop; never kneel, crouch, or crawl; frequently reach, push, and pull up to the limits of light work; and frequently handle, finger, or feel. (A.R. 57.) VE Burger testified that such a person could work as a housekeeper, inspector, or sales clerk. (A.R. 57-85.) ALJ Olszewski then provided the same hypothetical with an additional limitation of sedentary work. (A.R. 58.) VE Burger testified that such an individual could be employed as a food order clerk, charge account clerk, and document clerk. (A.R. 58-59.) VE Burger further testified that an individual who would be off-task more than 5 percent

of the workday or would miss more than one day of work per month could not perform any full-time work in the national economy on a regular, sustained basis.  (A.R. 63.)

   4.  *The Commissioner's Decision*

ALJ Olszewski found that Plaintiff was not engaged in substantial gainful activity through his date last insured and his severe impairments were: tendinopathy of the shoulder; detached anterior superior labrum; degenerative disc disease; carpal tunnel syndrome; obesity; and vestibular dysfunction.  (A.R. 12.)  The ALJ concluded that Plaintiff's impairments singularly or in combination did not meet the Listings.  (A.R. 13.)  The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence.  (A.R. 15.)  ALJ Olszewski based her decision on the fact that the longitudinal treatment record reflects moderate findings, mostly stable symptoms, and adequate physiologic functioning, despite musculoskeletal impairments and shoulder surgeries.  (*Id.*)  The ALJ noted Plaintiff's treatment was fairly routine and conservative and Plaintiff's daily activities supported that Plaintiff could work.  (*Id.*)

The ALJ found the opinion of Dr. Mann persuasive, except the ALJ found greater spinal impairments.  (A.R. 17.)  The ALJ also found Drs. Archbald's and Ehlert's opinions persuasive.  (A.R. 18.)  However, the ALJ concluded the opinions of Drs. Habif and Salkin were not persuasive as they suggest greater limitations than supported by the objective medical evidence.  (*Id.*)  Of note, ALJ Olszewski found the statements of the treating physicians who opined that Plaintiff was 100% or partially disabled to be vague, conclusory, and related to the issue of disability reserved to the Commissioner.  (A.R. 18-19.)

ALJ Olszewski found that Plaintiff had the RFC to perform light work with additional limitations. (A.R. 27.) Specifically, the ALJ determined that Plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently, and could sit, stand, or walk up to six hours each in an 8-hour workday, could occasionally climb ramps and stairs, but should never climb ladders and scaffolds; could occasionally balance and stoop; should never kneel, crouch, and crawl; could frequently reach, push, and pull up to the weight limits of light level work; and could frequently handle, finger, or feel. (A.R. 14.)

Based on the VE testimony, the ALJ determined that there were jobs within the context of the above RFC existing in significant numbers in the national economy that Plaintiff could perform, such as housekeeper, inspector, and sales clerk. (A.R. 20.) Accordingly, ALJ Olszewski found Plaintiff was not disabled. (A.R. 21.)

## DISCUSSION

### 1. Standard of Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id*. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g)[.]").

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (internal quotation marks and citation omitted).

In its review of this Claim, the Court also applies the frequently reiterated standards for entitlement to Social Security disability benefits, examination of the procedures employed and development of the record, evaluation of the medical and vocational evidence, and the evaluation of mental impairments as amended by the new regulations in 2017.  These standards, along with numerous authorities and citations, are discussed at length, merely by way of example, in *Vellone v. Saul*, 2021 WL 319354, at *1 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom.*, *Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021), which discussions are hereby incorporated by reference.

### *2.  Analysis*

As a threshold matter, the "court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record."  *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).  In this case, after a careful review, the Court finds ALJ Olszewski's development of the record thorough and complete and that she applied the correct legal standards.

18

As further discussed below, the Court finds Plaintiff's sole argument, that the ALJ failed to properly evaluate the medical opinion evidence in formulating the RFC, is without merit. Plaintiff asserts that Drs. Archbald's and Mann's opinions do not constitute substantial evidence to support the ALJ's RFC determination insofar as Dr. Archbald's treatment notes indicate Plaintiff suffered from neck, shoulder, and back pain on palpation and other testing and Dr. Mann's opinion is not consistent with the overall record.  (Joint Stip., pp. 22-25.)

At steps one through four of the Commissioner's assessment of disability, including the evidence used to support an RFC determination, it is the claimant who bears the burden to show that he or she is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022) (citation omitted); *Jackson v. Kijakazi*, 2022 WL 620046, at *11 (S.D.N.Y. Mar. 3, 2022).  The RFC assessment is a legal determination for which the ALJ is responsible as trier of fact.  20 C.F.R. § 404.1546(c).  "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).  An ALJ's RFC determination need not perfectly correspond with any medical opinion as long as it is consistent with the record as a whole.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Further, in arriving at a decision on disability, the Commissioner must consider several factors including the supportability and consistency of medical opinions contained in the record.  *See Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *6 (S.D.N.Y. Oct. 21, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

19

Here, in reviewing the totality of the medical records, ALJ Olszewski's RFC determination is supported by substantial evidence.  The treatment notes of several physicians do not evidence greater limitations.  For example, Dr. Ling noted Plaintiff suffered no acute distress, no gross deformity of the right shoulder, his right rotator cuff was tender, but an x-ray finding was unremarkable and showed no fracture or dislocation.  (A.R. 248-49, 252.)  Further, Dr. Murray observed that Plaintiff had normal strength, occasional soreness and clicking in his right shoulder, did not have any pain with movement of either of his shoulders, and had normal grip strength and no weakness in either hand.  (A.R. 343-34, 454-55.)  He also noted that Plaintiff's gait and station were normal and had normal range of motion and sensation in his lower extremities.  (A.R. 297.)  Similarly, Dr. Habif noted that Plaintiff had normal range of motion in the joints in his upper extremities.  (A.R. 416.)  Dr. Mann observed Plaintiff's shoulder had mild tenderness upon palpation, but did not have any heat, swelling, erythema, impingement, or crepitus.  (A.R. 358.)  He further noted that the range of motion in Plaintiff's right shoulder was slightly below normal.  (*Id.*)

As to Plaintiff's back, Dr. Mann found that Plaintiff had no muscle spasms or complaints of tenderness with palpation of the paracervical muscles, although his range of motion was also slightly below normal.  (A.R. 462-63.)  Dr. Archbald noted that Plaintiff had full (5/5) strength and normal reflexes and sensation in his upper extremities, and full range of motion of his elbows, forearms, and wrists bilaterally.  (A.R. 452.)

The evidence depicting that Plaintiff was perhaps more functionally limited is confined to Dr. Sobin, who noted on September 19, 2017, that Plaintiff needed assistance rising from a seated position, was unable to toe walk, and found tandem gait painful.  (A.R. 276.)  However,

on December 6, 2017, Dr. Mann noted Plaintiff walked with normal gait and was in no acute distress.  (A.R. 462.)  Furthermore, Dr. Archbald noted on January 12, 2018, Plaintiff's gait and stance were normal, he could walk on heels and toes without difficulty, could squat fully with a complaint of lower back pain, did not need any help changing for the examination or getting on/off examination table, and could rise from a chair without difficulty.  (A.R. 421)  No other medical providers agreed with the limitations noted by Dr. Sobin.

Further, the medical opinion evidence does not support a more limited RFC.  On September 12, 2017, Dr. Murray stated that Plaintiff was close to maximum medical improvement with respect to his right shoulder and could likely return to work in some capacity and recommended a functional evaluation.  (A.R. 347.)  Dr. Mann opined that Plaintiff was capable of working with restrictions placed on any lifting over 40 pounds, and any overhead repetitive movement.  (A.R. 359.)  Dr. Archbald opined that Plaintiff's prognosis was fair, and that Plaintiff had mild limitation for lifting and carrying, raising, reaching, and rotation of his shoulders, activities involving cervical spine extension, lateral rotation and flexion to the right lateral flexion, and squatting, and moderate limitation for bending.[1]  (A.R. 423.)  Dr. Ehlert opined that Plaintiff was limited to light exertional work; occasional stooping; frequent climbing ladders, ropes, or scaffolds, climbing ramps or stairs, balancing, kneeling, crouching, or crawling; and limited overhead right reaching and right handling.  (A.R. 70-71.)  He also opined Plaintiff can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and can stand or walk for about six hours in an eight-hour workday.  (*Id*.)

---

[1] The Second Circuit has recognized that a medical opinion finding moderate physical limitations supports an RFC of light work.  *See Snyder v. Saul*, 840. F. App'x 641, 643 (2d Cir. 2021).

Although other doctors found greater limitations, they are not supported by the record. Dr. Habif initially opined on September 12, 2017, that Plaintiff could lift up to 5 pounds frequently and 10 pounds occasionally, could stand and/or walk up to 2 hours in an 8-hour workday, and could sit up to 2 hours in an 8-hour workday.  (A.R. 268-69, 444.)  Dr. Habif further opined that Plaintiff could never perform any postural activities, could never push and/or pull with the bilateral upper extremities, and could only occasionally reach (including overhead), feel, or handle.  (A.R. 269, 445.)  However, in a letter to Dr. Sobin dated January 4, 2018, after his initial opinion, Dr. Habif opined that Plaintiff could lift or carry 10-15 pounds without aggravating his injury.  (A.R. 415-18.) And, Dr. Salkin opined that Plaintiff could perform activities of daily living and return to work as long as he did not lift greater than 10-15 pounds or perform work about shoulder level with the right arm.  (A.R. 424, 473.)  Plaintiff testified that he lifted his son who weighed between 30 to 40 pounds, albeit with some pain.  In light of this evidence and the fact that the RFC assessment is reserved to the Commissioner, the ALJ reasonably concluded that Plaintiff could perform light work which includes the occasional lifting of up to 20 pounds and the frequent lifting of 10 pounds.  *See* 20 CFR 404.1567(b); *Matta*, 508 F. App'x at 56; *Lisa K. v. Comm'r of Soc. Sec.*, 2022 WL 2317968, at *8 (W.D.N.Y. June 28, 2022).

As to Plaintiff's activities of daily living, he testified that he occasionally drove to do errands, sometimes several times per day, however, did not like to drive long distances.  (A.R. 36-37, 43-44.)  He also testified to taking his son on trips to the Bronx Zoo and Bear Mountain. (A.R. 45.)  Plaintiff also stated that he changed his son's diapers, fed and dressed him.  (Id.)

Given all of the above evidence, the ALJ adequately accounted for Plaintiff's limitations in formulating his RFC, and her determination is supported by and consistent with the record. Importantly, it "is not the function of this Court to re-weigh evidence or consider *de novo* whether Plaintiff is disabled." *Michele B. v. Comm'r of Soc. Sec.*, 2021 WL 5543940, at *7 (W.D.N.Y. Nov. 27, 2021).  Here, the ALJ correctly noted "[t]he longitudinal record documents treatment for various medical conditions, including multiple musculoskeletal impairments, but overall reflects moderate findings, mostly stable symptoms, and adequate physiologic functioning with, aside from two arthroscopic right shoulder surgeries, fairly routine and conservative management, primarily with medications, periodic injections, and physical and chiropractic therapy."  (A.R. 15.)

Specifically, the ALJ determined that Plaintiff could perform light work, but with additional limitations.  (A.R. 12.)  The ALJ's finding that Plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently is supported by Plaintiff's own testimony that he could lift his son who weighed between 30 to 40 pounds, and the opinions of Drs. Mann, Archbald, and Ehlert.  Although Drs. Habif and Salkin did not opine Plaintiff could lift 20 pounds, they nonetheless agreed he could lift up to 15 pounds without issue.  As to Plaintiff's ability to sit, stand, or walk up to six hours each in an 8-hour workday, this is supported by Dr. Ehlert's opinion.  Lastly, both Drs. Archbald and Ehlert's opinions support a finding that Plaintiff could occasionally climb ramps and stairs, balance, and stoop, frequently reach, push, and pull up to the weight limits of light level work; and frequently handle, finger, or feel.

Of note, although Drs. Habif, Dassa, and Sobin opined that Plaintiff was 100% disabled (A.R. 298, 432, 486), Dr. Salkin opined that Plaintiff was 50% disabled (A.R. 473), and Dr. Mann

23

found Plaintiff had a mild partial disability of 25 percent (A.R. 272, 276, 358), these opinions were not binding on the ALJ because they were based on the New York State Workers Compensation guidelines.  The standard for establishing disability for workers' compensation purposes is different than the standard for social security disability insurance benefits.  *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 345 (S.D.N.Y. 2020); *see* also 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled ... is based on its rules, it is not binding on us").  Accordingly, "the opinion provided in a workers' compensation claim . . . is not controlling with respect to a claim of disability claim under the Act." *Urbanak v. Berryhill*, 2018 WL 3750513, at *24 (S.D.N.Y. July 18, 2018), *report and recommendation adopted*, 2018 WL 3745667 (S.D.N.Y. Aug. 7, 2018); *see also Mangum v. Colvin*, 2015 WL 629403, at *11 n.13 (S.D.N.Y. Feb. 13, 2015) ("the characterization of Plaintiff as 'disabled' by medical providers for purposes of his Workers' Compensation claim is not particularly useful in the Social Security context because the two statutory schemes have completely different definitions of disability.").  Accordingly, ALJ Olszewski did not err in affording these medical conclusions as to percentage of disability little weight.

At bottom, this case is similar to *Morgan v. Comm'r of Soc. Sec.*, where the court found that notwithstanding workers compensation doctors' findings that the plaintiff was 100% disabled because of shoulder and back conditions, among other ailments, the ALJ properly found that Plaintiff was nonetheless not disabled within the meaning of the Social Security Act because there was substantial evidence in the record to support the ALJ's finding.  2022 WL 1051177, at *8-9 (S.D.N.Y. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL

704013 (S.D.N.Y. Mar. 9, 2022); *see also Franklin v. Saul*, 482 F. Supp. 3d 250, 264 (S.D.N.Y. 2020); *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 399-401 (S.D.N.Y. 2019).

The Court cannot second guess the ALJ's determination if it is supported, as it is here, by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and Defendant's motion for judgment on the pleadings is GRANTED.

**SO ORDERED.**

Dated: July 21, 2022
       New York, New York

KATHARINE H. PARKER
United States Magistrate Judge